UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 04-61704-CIV-ALTONAGA/Bandstra

B I O V A I L   L A B O R A T O R I E S
INTERNATIONAL SRL,

      Plaintiff,

vs.

ABRIKA, LLLP, a limited partnership;
ABRIKA PHARMACEUTICALS, INC., a
corporation of Florida; and ABRIKA
PHARMACEUTICALS, LLLP,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Plaintiff, Biovail Laboratories International

SRL's[1] ("Biovail['s]") Motion to Designate Paul J. Maes as an Independent Consultant Pursuant to

the Court's Protective Order [D.E. 456], filed on September 27, 2006; and Defendants, Abrika,

LLLP, Abrika Pharmaceuticals, Inc., and Abrika Pharmaceuticals, LLLP's (collectively "Abrika['s]")

Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion to Designate Paul J. Maes as

an Independent Consultant [D.E. 487], filed on November 1, 2006.  Biovail's Motion requests that

Paul J. Maes, a former Biovail employee, be designated as an independent expert consultant pursuant

to the parties' agreed Protective Order [D.E. 141] (the "Protective Order") issued by Magistrate

Judge Ted E. Bandstra on June, 10, 2005.  Abrika, objects to Mr. Maes' designation as an

independent expert consultant because (1) he was a major participant in the development of

Wellbutrin XL, and, as such, he will be a fact witness in this case; (2) he has an ongoing relationship

---

[1] Plaintiff, Biovail Laboratories International SRL, is a wholly owned subsidiary of Biovail Corporation, and is the assigned owner of the patents to Wellbutrin XL.

Case No. 04-61704-CIV-ALTONAGA/Bandstra

with Biovail as an independent consultant with Biovail's subsidiary, Biovail Technologies (Ireland) Ltd. ("Biovail Ireland"), thus his designation as an independent expert runs contrary to the Protective Order; and (3) Mr. Maes' former and current relationship with Biovail creates a high likelihood that he may use Abrika's confidential business and technical information to devise strategies for Biovail or other competitors.   Abrika also requests sanctions in the form of attorney's fees and costs for having had to prepare the objection to Biovail's Motion.

The Protective Order provides that "[m]aterials received from a Designating Party and designated 'CONFIDENTIAL – ATTORNEYS' EYES ONLY' . . . may be disclosed only to the following persons: . . . (2) The Parties' independent expert(s) or consultant(s), but only to the extent that the procedure set forth in Paragraph 12 is followed . . . ." (*Protective Order* [D.E. 141] ¶ 10). Paragraph 12 of the Protective Order defines an expert or consultant as "a person who is neither an employee of a party nor anticipated to become an employee in the near future, and who is retained or employed as a *bona fide* consultant or expert for purposes of this litigation, whether full or part time, by or at the direction of counsel for a party." (*Id.* ¶ 12).

From 1998 until November 2005, Mr. Maes was an employee of Biovail Corporation and Biovail Technologies Ltd., a wholly owned subsidiary of Biovail Corporation.   (*See Mot. to Designate* [D.E. 456], Ex. 1).  During his tenure with these companies, Mr. Maes was involved in bringing Wellbutrin XL, the patents of which are at issue in this litigation, to market.  (*See Resp.* [D.E. 461 ], Ex. A at BV 00006353, 0006395, 00022092, 0006396).  Internal emails produced by Biovail[2] describe Mr. Maes as playing a "key role" in the FDA approval process for Wellbutrin XL.

---

[2] It is unclear whether the emails were from Biovail, Biovail Corporation or Biovail Technologies, Ltd..

(*See id.* at BV 00006840).  Moreover, Biovail has designated Mr. Maes as its witness to cover topics related to, *inter alia*, the research and development of Wellbutrin XL and its clinical development in response to Abrika's notice of deposition, pursuant to Fed. R. Civ. P. 30(b)(6).

Since August 2005, Mr. Maes has been and continues to be the Director and President of Maes Pharm@Consult, which his *curriculum vitae* describes as a "Belgian based Consulting firm specialized in Lifesciences [sic]."  (*Mot. to Designate*, Ex. 1).  In his current position, Mr. Maes has and continues to provide consulting services to Biovail Ireland.[3]  (*See id.*, Ex. 2).  It is not clear from the record whether Mr. Maes' current consulting work for Biovail Ireland is related to Wellbutrin XL and/or if his work is in any way related to Biovail's U.S. operations.

Federal courts have an inherent power to disqualify experts in order to protect the integrity of the adversary process and to promote public confidence in the fairness and integrity of the legal system.  *See Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) (citations omitted).  Courts have utilized the following factors when determining whether an expert is independent under the terms of a protective order:

> (1) the individual's relationship to or status within the receiving party's business, (2) the individual's present involvement in the receiving party's competitive decisions, (3) the likelihood of the relationship continuing, and (4) the feasibility of separating either the knowledge gained or the individual from future endeavors.

*AG Fur Atherische Ole v. Gucci America, Inc.*, 2006 WL 838996, at *2 (S.D.N.Y. 2006) (citing *BASF Corp. v. United States*, 321 F. Supp. 2d 1373, 1380 (Ct. Int'l Trade 2004); *Ares-Serono, Inc. v. Organon Int'l B.V.*, 153 F.R.D. 4, 6 (D. Mass. 1993)).  Additionally, courts have considered the

---

[3] In Biovail's initial August 31, 2006 notification to Abrika regarding the designation of Mr. Maes as a consultant, Biovail did not disclose that Mr. Maes is a consultant for Biovail Ireland.  It was only after Abrika's September 6, 2006 objection that Biovail revealed that Mr. Maes consults for Biovail Ireland.

availability of and the receiving party's success at finding other expert consultants.  *See, e.g.*, *Ares-Serono, Inc.*, 143 F.R.D. at 7 ("This court also finds it material that plaintiffs underwent significant efforts to retain, albeit unsuccessfully, the services of another expert."); *Wang Laboratories, Inc. v. CFR Assoc., Inc.*, 125 F.R.D. 10, 13 & n.2 (D. Mass. 1989) (noting that party failed to demonstrate that no other expert could provide it with similar expertise).

Turning to Mr. Maes' relationship with Biovail Corporation's business, it appears that he was an integral part of the team that developed Wellbutrin XL and that he helped to secure the drug's FDA approval.  It is also apparent that Mr. Maes may serve as a fact witness in this matter due to his involvement with the development of Wellbutrin XL.  Abrika argues that Mr. Maes' previous employment with Biovail Corporation's subsidiaries and his status as a fact witness in this case should preclude him from serving as an independent consultant for Biovail.

Mr. Maes' previous employment with Biovail Corporation and its subsidiaries and his work on matters relating to this litigation does not support his disqualification as an independent expert.  *See Ares-Serono, Inc.*, 153 F.R.D. at 6 (holding that expert's previous employment with receiving party, which was related to the subject of the litigation, did not warrant expert's disqualification).  Furthermore, "[t]hat a fact witness has been retained to act as a litigation consultant does not, in and of itself, appear to be improper, absent some indication that the retention was designed as a financial inducement or as a method to secure the cooperation of a hostile witness, or was otherwise improper."  *Prasad v. MML Investors Serv.*, 2004 WL 1151735, at *6 (S.D.N.Y. 2004) (citations omitted).  Here, Abrika presents no evidence to demonstrate that the retention of Mr. Maes was

designed to secure his cooperation at trial.[4]  Indeed, the fact that Mr. Maes consults for a Biovail Corporation subsidiary, Biovail Ireland, demonstrates that he is not likely to be a witness hostile to Biovail.  Thus, Mr. Maes' previous employment relationship does not raise any significant concerns.

Mr. Maes' current relationship with Biovail, however, raises a panoply of questions as to his independence.  Biovail contends that Mr. Maes' continuing work as a consultant for Biovail Ireland does not render Mr. Maes a current employee of Biovail under the Protective Order because Biovail Ireland is a completely separate entity from Biovail Laboratories International SRL and because Mr. Maes' ongoing consultancy with Biovail Ireland does not relate to the subject matter of this litigation.

Biovail's arguments do not persuade.  The fact that Mr. Maes is technically referred to as a consultant for Biovail Ireland does not end the inquiry; rather, the Court must determine whether Mr. Maes should be considered a Biovail employee for "all practical purposes," based upon his actual relationship with Biovail.  *See Beam Sys. Inc. v. Checkpoint Sys., Inc.*, 1997 WL 364081, at *5 (C.D. Cal. 1997) (holding that proposed expert consultant's continuing consulting arrangement with receiving party sufficed to deny expert designation).  Biovail Corporation's website states that Biovail Ireland is a wholly-owned subsidiary of Biovail Corporation, as is Biovail, and that Biovail Ireland "continues to play an important role to support Biovail's goal to build its drug-development pipeline, and to further its position as one of the most productive in the global pharmaceutical industry." (*Resp.*, Ex. C).  Biovail Corporation's  website also states that one of Biovail Ireland's endeavors is

---

[4] Additionally, the case that Abrika relies on in support of its contention, *State of New York v. Solvent Chemical Co., Inc.*, 166 F.R.D. 284, 290 (W.D.N.Y. 1996), does not apply here.  In *Solvent Chemical Co.*, the district court concluded that the retention of a fact witness by a party as a consultant who was an adverse party to the retaining party in a separate litigation was a demonstration of clear impropriety, compounded by the fact that counsel for the retaining party failed to reveal the witness' retention as a consultant to opposing counsel.  *Id.*  Abrika has failed to put forth any evidence demonstrating such clear impropriety here.

to "improve the company's promoted products through controlled release drug-delivery technologies . . . ." (*Id.*). The description of Biovail Ireland on the website, the only evidence in the record regarding Biovail Ireland's operations, suggests that Biovail Ireland serves as an active arm of Biovail Corporation's research and development team, particularly with respect to the development of drug release technologies, which is at issue in this case.

Bioval's assertion that Mr. Maes is not involved with any matters at issue in this litigation does not suffice. Biovail has failed to provide any evidence demonstrating that Mr. Maes' consultancy with Biovail Ireland does not relate to the subject matter of this case. Specifically, Biovail has not produced any affidavit or other documentation describing the relationship between Mr. Maes and Biovail Ireland. At present, the nature of Mr. Maes' relationship with Biovail Ireland and/or Biovail is unknown, and it is not clear whether Mr. Maes is involved in Biovail's competitive decision making. What is known, however, is that Mr. Maes consults for a subsidiary of Biovail Corporation that specializes in technologies that are at issue in this case. Due to Biovail's lack of disclosure, the undersigned is unable to conclude that Mr. Maes does not serve an active role in Biovail's competitive decision-making or that he would be able to "segregate any knowledge gained in this case from future analyses provided in his role as a consultant." *U. S. Gypsum Co v. Lafarge North America, Inc.*, 2004 WL 816770, *1 (N.D. Ill. 2004) (citations omitted).

Moreover, Biovail's contention that Mr. Maes' relocation to France demonstrates the unlikelihood of his return to Biovail's employ is not determinative. Mr. Maes' current geographic location does not preclude any future employment with Biovail, given that he has a continuing relationship with a Biovail subsidiary outside of France. Indeed, the fact that Mr. Maes still serves Biovail Corporation suggests that the two may continue to have a relationship in the future.

Case No. 04-61704-CIV-ALTONAGA/Bandstra

Mr. Maes is not the only potential expert consultant available to Biovail. At this time Biovail has designated at least seven other consultants in this case, one of whom, Mr. Adolfo Gomez, has a background and experience similar to that of Mr. Maes. (*See Resp.*, Ex. J). Biovail has failed to demonstrate that no other expert could provide it with similar expertise, which, given Abrika's objections, weighs against the designation of Mr. Maes as an expert. *See Wang Laboratories, Inc.*, 125 F.R.D. at n.2; *Ares-Serono, Inc.*, 153 F.R.D. at 7.

As the facts stand, Mr. Maes is not an independent expert consultant pursuant to the Protective Order, and his designation as an expert is improper. Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Biovail's Motion **[D.E. 456]** is **DENIED**.

2. Abrika's request for attorney's fees and costs **[D.E. 461]** is **DENIED**.

3. Abrika's Motion **[D.E. 487]** is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 13th day of March, 2007.

*Cecilia M. Altonaga*
_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   Magistrate Judge Ted E. Bandstra
      counsel of record

-7-